UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

ENEIDA DELVALLE,

        Plaintiff,

                                      No. 22-CV-07717-LTS

    -v-

UNUM GROUP CORP., FIRST UNUM LIFE
INSURANCE COMPANY,

        Defendants.

--------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER

Plaintiff Eneida DelValle ("Plaintiff" or "DelValle") brings this action under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. § 1001 et seq. (Westlaw through P.L. 119-80), against First Unum Life Insurance Company ("Unum" or "Defendant") and Unum Group Corp. (collectively, "Defendants") for improper denial of long-term disability ("LTD") benefits.  Plaintiff and Defendants have, respectively, moved for summary judgment on Plaintiff's claims.  (Docket entry nos. 56, 59).  The Court has jurisdiction of this action pursuant to 28 U.S.C. section 1331 and 29 U.S.C. section 1132(e).

The Court has considered the parties' submissions carefully and, for the following reasons, Plaintiff's motion for summary judgment is denied in full, and Defendants' motion for summary judgment is granted in part and denied in part.

## I.    BACKGROUND

The following material facts are undisputed unless otherwise indicated.[1]  Plaintiff worked as an investigative news producer for CBS.  (Pl. 56.1 St. ¶ 1.)  She participated in CBS's employee benefit plan (the "Plan"), which included both short-term and long-term disability insurance.  (Id. ¶ 2.)  A claimant is "disabled" under the Plan, and thus eligible for benefits, if she is "limited from performing the material and substantial duties of [her] regular occupation due to [her] sickness or injury" and incurs "a 20% or greater loss" in indexed monthly earnings.  (Pl. 56.1 Resp. ¶ 90.)  "Material and substantial duties" include those that "are normally required for the performance of [one's] regular occupation; and cannot be reasonably omitted or modified." (Id.)  The Plan defines "regular occupation," in turn, as "the occupation [one is] routinely performing when [one's] disability begins."  (Id.)  After 24 months, however, the Plan provides LTD benefits only when "due to the same sickness or injury, [the claimant is] unable to perform the duties of any gainful occupation for which [she is] reasonably fitted by education, training or experience."  (Id.)  To access LTD benefits under the Plan, a claimant must be continuously disabled throughout an "Elimination Period," which is defined as the later of 180 days after the onset of the disability or the date short-term benefits end.  (Id. ¶ 92.)

Plaintiff contracted COVID-19 in December 2020 and was hospitalized.  (Def. 56.1 Resp. ¶¶ 13-14.)  After three weeks, she returned to work but reported symptoms such as headaches, coughing, muscle aches, joint pain, vomiting, and diarrhea.  (Id. ¶ 17.)  After

---

[1]    Facts characterized as undisputed are identified as such in the parties' "56.1 Statements" pursuant to S.D.N.Y. Local Civil Rule 56.1 (docket entry no. 58 ("Pl. 56.1 St."); docket entry no. 62 ¶¶ 1-86 ("Def. 56.1 Resp."); id. ¶¶ 87-241 ("Def. 56.1 St."); docket entry no. 64 ("Pl. 56.1 Resp.")), or drawn from evidence as to which there has been no contrary, non-conclusory factual proffer.  Citations to the parties' 56.1 Statements incorporate the parties' citations to the underlying evidentiary submissions and the opposing party's reply, if any.

consulting her primary care provider, Dr. Salinas, who diagnosed her as a "COVID-19 long hauler," Plaintiff stopped working on March 15, 2021.  (Pl. 56.1 St. ¶¶ 18, 21.)  Plaintiff received 26 weeks of short-term disability benefits through the Plan.  (Id. ¶ 19.)  After this short-term disability period, Defendant informed Plaintiff that it "would evaluate her eligibility for long term disability benefits."  (Id. ¶ 23.)  The parties agree that the Elimination Period in this case is from March 15, 2021, to September 12, 2021.  (Pl. 56.1 Resp. ¶ 235.)

On September 3, 2021, Plaintiff reported in a telephone call to Unum's disability benefit specialist symptoms of coughing, brain fog, headache, shortness of breath, trouble sleeping, lack of smell or taste, lack of appetite, chest pains, heart palpitations, an accelerated heart rate, and nausea.  (Id. ¶¶ 96-97.)  Defendant initially reviewed Plaintiff's claim on September 7, 2021, determining that her occupation involved "light work: lifting, carrying, pushing, pulling 20 pounds occasionally; frequently up to 10 pounds or negligible amount constantly; sitting frequently, standing occasionally, and walking occasionally with travel." (Def. 56.1 St. ¶ 99.)  After initially concluding that "medical records did not appear to support that [Plaintiff] had a decrease in sustained functional capacity through the Elimination Period," Defendant sought additional medical records.  (Id. ¶ 100.)

On September 10, 2021, Plaintiff submitted records from her allergist, Dr. Mainardi, who reported the results of a gastric emptying test showing "delayed gastric emptying consistent with gastroparesis."  (Id. ¶ 106; Def. 56.1 Resp. ¶ 25.)  Plaintiff also included correspondence from Dr. Mainardi referring to Plaintiff's anaphylactic reaction to the COVID-19 vaccine.  (Def. 56.1 Resp. ¶ 26).  Plaintiff also submitted records from her physical therapist, Dr. Caputo.  (Id. ¶ 28.)  Dr. Caputo's statement noted that Plaintiff "has been unable to return to regular pre-covid levels of energy" and experiences symptoms of "extreme fatigue, light

headedness, nausea, headache, and frequent vomiting," which "prevent[] [Plaintiff] from returning to regular work capacity." (Id.)

Defendant then conducted a review of Plaintiff's claim on September 23, 2021, involving a disability claims director, a disability benefits specialist, a clinical representative, and a vocational representative. (Pl. 56.1 Resp. ¶ 109.) That review considered Dr. Salinas's attending physician's statement on March 14, 2021, which initially anticipated that Plaintiff would be able to return to work on May 3, 2021, and stated there were "no limitations when patient returns to work." (Id. ¶¶ 112-14.) The reviewers also considered Dr. Salinas's update on August 24, 2021, which included the diagnosis of Plaintiff as a "Covid 19 long hauler," and Dr. Salinas's opinion that Plaintiff could only occasionally lift up to 10 pounds and never more than 10 pounds. (Id. ¶ 116.)

Each of Defendant's reviewers concluded that Plaintiff's medical records did not support the provision of LTD benefits. Defendant's clinical representative first concluded that "due to lack of significant diagnostic findings to corroborate reported level of symptoms," Plaintiff did not lack functional capacity for the demands of her occupation. (Id. ¶ 121.) Defendant's on-site physician, Dr. Kirsch, likewise concluded that Plaintiff's reported symptoms were "not consistent with physical exam findings, diagnostic test findings and treatment intensity . . . . [and] would not have risen to a level that would be considered impairing, as of March 15, 2021 and ongoing." (Id. ¶ 143.) Regarding Plaintiff's mental health, Dr. Kirsch noted that despite a onetime, suboptimal cognitive assessment score, "no other treating providers have noted abnormal mental status exam findings." (Id. ¶ 141.)

Dr. Kirsch also recommended a second-level review in addition to his conclusion. (Id. ¶ 144.) The second-level reviewer, Dr. Gross, concurred with Dr. Kirsch and concluded that

"[t]he preponderance of evidence in the available medical records supports that the insured is not precluded from the performance of the occupational duties outlined (in the referral)."  (Id. ¶ 147.) Dr. Gross determined that there were "no clinical findings present in the available records to support the degree of the insured's self-reported impairment to support the restrictions and limitations opined by the [attending physician]."  (Id. ¶ 149.)

Defendant informed Plaintiff of the denial of her LTD benefits claim on October 22, 2021.  (Id. ¶ 150.)  On April 20, 2022, Plaintiff timely appealed the determination.  (Id. ¶ 161; Pl. 56.1 St. ¶ 39.)  As part of her appeal, Plaintiff provided medical records from several doctors.  Dr. Warren, a neuro-opthalmologist, reported "superior altitudinal defect and enlarged blindspot" as part of Plaintiff's optical health.  (Pl. 56.1 St. ¶ 41.)  Dr. Polizzi, a cardiologist, reported that Plaintiff suffered from "post acute sequ[e]lae of Covid-19," "dysfunctional autonomic nervous system," and "Mast Cell activation syndrome."  (Id. ¶ 45; Pl. 56.1 Resp. ¶ 164.)  Dr. Polizzi opined also that Plaintiff would be unable to lift or carry more than 5 pounds and would require 4 to 6 hours of rest in an 8-hour workday.  (Pl. 56.1 St. ¶ 46.)  Dr. Salinas likewise concluded that Plaintiff had similar functional limitations due to "multiple symptoms . . . secondary to covid," among other illnesses.  (Id. ¶¶ 47-48.)  Dr. Whiteson, a cardiologist, reached similar conclusions as to Plaintiff's functional capacity due to cardiovascular and autonomic symptoms.  (Id. ¶ 58.)  Dr. Kwah, a gastroenterologist, similarly concluded that Plaintiff suffered functional limitations, listing gastrointestinal diagnoses including gastroparesis and IBS-D.  (Id. ¶¶ 50-51.)  From these diagnoses, Dr. Kwah concluded that Plaintiff's "complaints seemed reasonable in light of [Dr. Kwah's] observations and diagnoses."  (Id. ¶ 54.) Dr. Warren also weighed in on Plaintiff's visual complications as a result of COVID-19, noting that Plaintiff suffers blurry vision, visual field defects, and light sensitivity.  (Id. ¶ 56.)

Plaintiff also collected correspondence weighing directly on her functional capacity.  Her physical therapist, Susan Greenberg, explained that Plaintiff's presentation and preliminary test results "represent[ed] a significant cardiac risk" and concurred with Dr. Polizzi's assessment of Plaintiff's functional capacity.  (Id. ¶¶ 60-61.)  A vocational rehabilitation report from Dr. Hankins likewise concludes that "whether considered alone or in combination, the medical opinions about Ms. DelValle's likely frequency of absences, need for unscheduled breaks, and/or repeated lapses in concentration and memory would clearly prevent an individual from engaging in full-time gainful activity."  (Id. ¶ 64.)

Defendant then referred this medical evidence introduced on appeal to its clinical consultant, Nurse Yeaton, for review.  (Id. ¶ 65; Def. 56.1 St. ¶ 201.)  After summarizing the evidence, Nurse Yeaton concluded that it did "not support [restrictions or limitations] that would have precluded [Plaintiff] from performing the occupational demands . . . as of [the Elimination Period] from both a physical and cognitive standpoint."  (Def. 56.1 St. ¶ 206.)  She explained that Plaintiff "ha[d] undergone an extensive diagnostic work up for a constellation of reported symptoms felt to be related to COVID as they began thereafter, which has been largely unremarkable and fails to correlate/explain the majority of the reported persistent symptoms."  (Id. ¶ 207.)  Defendant also referred the evidence to Dr. Norris, an on-site physician, for review.  (Id. ¶ 209; Pl. 56.1 St. ¶ 69.)  Dr. Norris likewise concluded that the medical evidence did "not support that the insured would have been incapable of performing her physical and cognitive occupational demands" during the Elimination Period.  (Def. 56.1 St. ¶ 215.)  He discussed how testing from across Plaintiff's medical records "did not identify structural disease or other pathologic conditions [consistent with] functional loss of such severity as to preclude from performing light occupational activity."  (Id. ¶ 218.)

Defendant thus upheld the denial of LTD benefits on August 4, 2022. (Pl. 56.1 Resp. ¶ 222.) In its denial letter, Defendant summarized the initial claim decision as well as the appeal decision. (Id. ¶ 223.) Defendant concluded that Plaintiff was not disabled from performing her regular occupation on a full-time basis throughout the Elimination Period. (Id. ¶ 226.) Defendant additionally stated that Plaintiff's "treatment remained conservative and of modest intensity," Plaintiff "was able to tolerate regular physical/occupational therapy sessions," and "[m]edical records do not support ongoing restrictions/limitations related to adverse medication effects and/or side effects." (Def. 56.1 St. ¶ 233.)

On September 9, 2022, Plaintiff filed her complaint challenging the decision. (Docket entry no. 1.) Both Plaintiff and Defendants have filed cross-motions for summary judgment, which have been fully briefed.

## II.    ANALYSIS

Under ERISA, a beneficiary may sue "to recover benefits due to him under the terms of his plan" or "to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "[A] denial of benefits challenged under [ERISA] § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Fay v. Oxford Health Plan, 287 F.3d 96, 103-04 (2d Cir. 2002) (second alteration in original) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). The parties agree that the Plan does not vest discretionary authority in an administrator, such that de novo review applies. (See docket entry no. 57 ("Pl. Mem.") at 12; docket entry no. 60 ("Def. Mem.") at 11.) Under de novo review, the Court considers "all aspects of the denial of an ERISA claim,

including fact issues," rather than deferring to the findings of the administrator.  Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 245 (2d Cir. 1999).

A plaintiff has the burden of proving, by a preponderance of the evidence, that she is disabled under an ERISA-covered plan.  See DeCesare v. Aetna Life Ins. Co., 95 F. Supp. 3d 458, 480 (S.D.N.Y. 2015).  Because both parties have moved for summary judgment, however, granting their respective motions is appropriate only "if the moving party shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law."  Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir. 2003).  Put otherwise, Plaintiff must show that there are no genuine issues of material fact that she is entitled to LTD benefits under the Plan to prevail on her motion, while Defendants must show that there are no genuine issues of material fact that Plaintiff is not entitled to LTD benefits under the Plan to prevail on their motion.  If neither party makes the required showing, both motions must be denied:

> As the Second Circuit has explained, when faced with a conflict between two [or more] potentially credible physician's reports, neither party is entitled to summary judgment where, as here, a Plan Administrator's decision is subject to de novo review: "Such a credibility determination is appropriate at a trial, but it exceeds the scope of a judge's authority in considering a summary judgment motion."

Sigal v. Metro. Life Ins. Co., No. 16-CV-3397-JPO, 2018 WL 1229845, at *12 (S.D.N.Y. Mar. 5, 2018) (quoting Napoli v. First Unum Life Ins. Co., 78 F. App'x 787, 789 (2d Cir. 2003)); see also McDonnell v. First Unum Life Ins. Co., No. 10-cv-8140-RPP, 2013 WL 3975941, at *13 (S.D.N.Y. Aug. 5, 2013) ("[S]ummary judgment is inappropriate in ERISA benefits disputes involving dueling medical experts where the resolution of the case depends on the Court adopting one expert's opinion over another's.").

Such is the case here.  The parties dispute whether Plaintiff qualified as disabled under the Plan during the Elimination Period, marshalling the opinions of several doctors coming to opposite conclusions.  For her part, Plaintiff discusses the opinions of Drs. Salinas and Caputo, who "each gave opinions in 2021 that Ms. DelValle was unable to work due to fatigue and other symptoms."  (Pl. Mem. at 13.)  Plaintiff also notes that "[n]o provider noted that [she] could lift greater than five pounds, and all noted that she had significant sitting, walking, and standing limitations — stating that she could sit for between two and four hours only and stand or walk between one- and four-hours max," a level of functional capacity which falls below the Plan's occupational definition of light work.  (Id.)  Plaintiff argues that Defendants' rejection of these conclusions as not "time-relevant," because they were formulated after the Elimination Period, is unsound because "medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis."  (Id. at 23 (quoting Tam v. First Unum Life Ins. Co., 491 F. Supp. 3d 698, 711 n.11 (C.D. Cal. 2020)).)

Defendants also argue that, because the reports on which Plaintiff relies do not identify "any specific diagnostic or objective tests, or clinical exam result or treatment given during the [Elimination Period]," they are "unreliable," "irrelevant[,] and insufficient to create an issue of fact precluding summary judgment in favor of [Defendants]."  (Def. Mem. at 13.)  Defendants note that the Court is not required "to accord special weight to the opinions of a claimant's physician."  (Id. at 14 (quoting Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003)).)  Instead, Defendants point to the opinions of Drs. Kirsch, Gross, and Norris to substantiate Defendants' position that "there is no objective medical evidence supporting disabling restrictions and limitations" during the Elimination Period.  (Id. at 15.)

Defendants are mistaken that medical evidence collected after the Elimination Period is "insufficient to create an issue of fact" with regard to their motion for summary judgment. At the summary judgment stage, factual inferences must be resolved in favor of the nonmovant. "[T]he mere absence of contemporaneous medical evidence of a disabling condition during the relevant time period does not necessarily preclude a finding of disability." Norman v. Astrue, 912 F. Supp. 2d 33, 82 n.74 (S.D.N.Y. 2012); see also Dimopoulou v. First Unum Life Ins. Co., 162 F. Supp. 3d 250, 261 (S.D.N.Y. 2016) (concluding that "[i]t was arbitrary and capricious for Unum to exclude from consideration or afford diminished weight to evidence of plaintiff's symptoms" falling outside of the period at issue "because that evidence could also have been consistent with . . . symptoms for the periods of time necessary to satisfy the diagnostic standards used by Unum"). Indeed, the Second Circuit has recognized that a plaintiff "might have satisfied his burden of demonstrating that he was continuously disabled . . . by means of evidence only from before and after that period." Arnone v. Bowen, 882 F.2d 34, 39 (2d Cir. 1989). Defendants are therefore incorrect in contending that non-time-relevant medical evidence cannot create a genuine issue of material fact.

Looking to such evidence, it is clear that Plaintiff and Defendant dispute material facts pertaining to Plaintiff's eligibility for LTD benefits. Plaintiff refers to the opinions of several doctors that conclude, based on medical examinations of her gastrointestinal, optical, cardiac, and cognitive health, that she continued to be unable to carry out the functional demands of her occupation. Defendants fault these opinions for failing to provide any "objective evidence of restrictions or limitations during the [Elimination Period]" and opining only on "current treatment" in February and March 2022. (Def. Mem. at 13-14.) Yet Plaintiff's medical professionals refer to observations of symptoms as well as test results that contribute to their

conclusion that Plaintiff was disabled.  Nowhere in their submissions do Plaintiff's doctors conclude that Plaintiff's functional capacity was impaired only during the time of their examinations, as Defendants assert.  Neither do the reports suggest that Plaintiff's disabling symptoms have only recently arisen, instead repeatedly referring to Plaintiff's COVID-19 illness in December 2020 as the onset of her gradually worsened condition.  In considering Defendants' summary judgment motion, factual inferences must be resolved in Plaintiff's favor.  It is disputed that Plaintiff was disabled, as defined by the Plan, during the Elimination Period, which is a genuine issue of material fact that bears directly on Plaintiff's ERISA claims.  Defendants' motion for summary judgment, insofar as it contends otherwise, must be denied.

This principle, however, applies to Plaintiff's motion with equal force.  See Troy v. Unum Life Ins. Co. of Am., No. 03-CV-9975-CSH, 2006 WL 846355, at *11 (S.D.N.Y. Mar. 31, 2006) (denying "both cross-motions for summary judgment" because "[t]he differing opinions of the several doctors, as well as of the vocational consultants, present a genuine issue as to the material facts of [plaintiff's] medical condition and his regular occupation").  Plaintiff not only disagrees with the medical professionals Defendants cite, but also argues that the Court should disregard the medical opinion of Dr. Norris entirely.  (See Pl. Mem. at 14-19.)  Plaintiff collects cases in which Dr. Norris's opinions were "discredited" and "criticized," going on to argue that Dr. Norris's report in this case should be similarly dismissed.  Yet as these cases acknowledge, such a credibility determination is inappropriate at the summary judgment stage.[2] See, e.g., Brown v. Unum Life Ins. Co. of Am., 356 F. Supp. 3d 949, 963 (C.D. Cal. 2019) ("In a

---

[2]    Plaintiff, citing to deposition testimony from another proceeding, makes similar claims regarding all of Defendant's doctors and concludes that "they are improperly motivated to deny claims." (Pl. Mem. at 19.)  Even if this evidence applied to the Defendant's doctors in this case, this dispute still concerns the competing credibility of Plaintiff's and Defendant's doctors, which therefore precludes summary judgment on that basis.

trial on the record, but not on summary judgment, the judge can evaluate the persuasiveness of conflicting testimony and decide which is more likely true." (quoting Kearney v. Standard Ins. Co., 175 F.3d 1084, 1095 (9th Cir. 1999) (en banc))).  Plaintiff vociferously disagrees with the conclusions of Defendant's doctors, but it is this disagreement that precludes summary judgment in her favor as well.[3]

As a result, "[t]hese selected opinions, none of which is unreliable as a matter of law, present genuine issues of material fact that cannot be resolved at this stage."  Garrett v. Provident Life & Cas. Ins. Co., No. 11-CV-133-RRM, 2020 WL 2734272, at *13 (E.D.N.Y. May 22, 2020).  The Court therefore denies both Plaintiff's and Defendants' motions for summary judgment with regard to Plaintiff's entitlement to LTD benefits.  As a result, the Court need not resolve the parties' dispute as to whether an award of benefits would extend to the date of judgment or the date of the final claim determination.  (See Pl. Mem. at 24; Def. Mem. at 23; Reply Mem. at 21.)

Defendants do, however, raise one undisputed issue of material fact that justifies summary judgment in part.  In their briefing, Defendants argue that Unum Group Corp. "is the parent corporation of First Unum Life Insurance Company" and "is not an insurer, has no privity of contract with plaintiff, and is not a proper party to this lawsuit."  (Def. Mem. at 1 n.1.) Plaintiff does not address this point in her briefing, "thereby forfeiting any counterarguments."

---

[3]   In her reply brief, Plaintiff raises, for the first time, a regulatory settlement agreement that allegedly requires Defendants to "accord [treating physician opinions] significant weight or violate its agreement with the insurance regulators."  (Docket entry no. 63 ("Reply Mem.") at 2.)  Even if a violation of this agreement were relevant to determining whether a genuine issue of material facts exists between the parties, "the Court need not address arguments made for the first time on reply."  Kominis v. Starbucks Corp., 692 F. Supp. 3d 236, 252 (S.D.N.Y. 2023); see Clubside, Inc. v. Valentin, 468 F.3d 144, 159 n.5 (2d Cir. 2006).

<u>In re AXA Equitable Life Ins. Co. COI Litig.</u>, 595 F. Supp. 3d 196, 231 (S.D.N.Y. 2022).  The Court therefore will grant summary judgment in favor of Defendants in part, dismissing only Plaintiff's claims against Unum Group Corp.

### III.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied in its entirety, and Defendants' motion for summary judgment is granted in part, only as to Plaintiff's claims against Unum Group Corp., and is in all other respects denied.  The parties will be referred to the Court's mediation program, and to Magistrate Judge Henry J. Ricardo for general pretrial management.  The Clerk of Court is respectfully directed to terminate Unum Group Corp. as a party in this case.

Docket entry nos. 56 and 59 are resolved.

SO ORDERED.

Dated: New York, New York
       March 31, 2026

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge